IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| PETER ALFECHE and KIM SAUNDERS, *on behalf of themselves and all others similarly situated*, <br>                Plaintiffs, <br>      v. <br><br>CASH AMERICA INTERNATIONAL, INC.; CASH AMERICA NET OF NEVADA, LLC; CASH AMERICA NET OF PENNSYLVANIA, LLC; and CASH AMERICA OF PA, LLC *d/b/a* CashNetUSA.com, <br>                Defendants. | CIVIL ACTION <br><br> No. 09-0953 |

**Norma L. Shapiro, J.**                                                                       **August 12, 2011**

## MEMORANDUM

Plaintiffs filed an amended class action complaint alleging that defendants' financial lending practices are illegal under Pennsylvania law. Before the court is defendants' motion to compel individual arbitration and stay litigation, based on an arbitration provision contained in each plaintiff's loan agreement. For the reasons discussed below, the motion will be granted.

**I.      Background**

Plaintiffs Peter Alfeche and Kim Saunders, Pennsylvania citizens, filed an amended class action complaint alleging illegal, unfair, and deceptive lending practices by defendants in violation of Pennsylvania's Loan Interest Protection Law ("LIPL"), 41 P.S. §§ 101, 502 *et seq.*, Consumer Discount Company Act ("CDCA"), 7 P.S. § 6201 *et seq.*, and Unfair Trade Practices and Consumer Protection Law ("UTPCPL"), 73 P.S. § 201-1 *et seq.*, and contractual unconscionability.

Defendant Cash America International, Inc. ("Cash America") is a Texas corporation with its principal place of business in Texas. The other defendants, Cash America Net of Pennsylvania, LLC, Cash America Net of PA, LLC, and Cash America Net of Nevada, LLC ("Cash America of Nevada"), are wholly owned subsidiaries of defendant Cash America. All defendants are Texas citizens. *See Zambelli Fireworks Mfg. Co., Inc. v. Wood*, 592 F.3d 412, 420 (3d Cir. 2010) (a limited liability company is a citizen of each state of which its members are citizens); *Swiger v. Allegheny Energy, Inc.*, 540 F.3d 179, 182 (3d Cir. 2008) (citing 28 U.S.C. § 1332(c)) (a corporation is citizen of its state of incorporation and state of its principal place of business). Defendants have operated a website, www.CashNetUSA.com, and a call center associated with the website, to provide short-term loan contracts, also called "payday" loans,[1] to individuals.

Plaintiffs Alfeche and Saunders purport to represent a class of thousands of Pennsylvania citizens who have obtained usurious payday loans from defendants during the four years preceding the filing of this action. Plaintiffs allege defendants have negotiated or made short-term loans of less than $25,000 with interest rates greatly exceeding the ceilings allowed under the Pennsylvania usury and small-loan laws. Pennsylvania has a general usury ceiling of six percent (6%), but licensed small-loan lenders can make consumer loans for amounts less than $25,000 at interest rates as high as twenty-four percent (24%) APR. *See* 41 Pa. Cons. Stat. Ann. § 201; 7 Pa. Con. Stat. Ann. § 6203. Plaintiffs allege that defendants, who were not licensed as small-loan lenders, charged Pennsylvania customers illegal interest rates (from 261% to 1141%).

---

[1] "Payday loans are short-term, high-interest-or-fee loans that are generally secured by a post-dated check or a debit authorization executed by the borrower and, subsequently, presented by the lender after a predetermined period, usually set at two weeks to coincide with the borrower's payday." *Pa. Dep't of Banking v. NCAS of Del., LLC*, 948 A.2d 752, 754 (Pa. 2008).

The Commonwealth Court of Pennsylvania has held, and the Pennsylvania Supreme Court recently affirmed, that defendants' lending practices were unlawful under the CDCA because defendants were not licensed by the Pennsylvania Department of Banking. *Cash Am. Net of Nev., LLC v. Pa. Dep't of Banking*, 978 A.2d 1028, 1038 (Pa. Commw. Ct. 2009), *aff'd*, 8 A.3d 282 (Pa. 2010). The Pennsylvania Department of Banking is enforcing the Commonwealth Court's order prospectively only. *Cash Am.*, 8 A.3d at 298-99. Plaintiffs' claims in the amended class action complaint are not the subject of an enforcement action because their claims arose before the Commonwealth Court held defendants' lending practices unlawful.

Plaintiffs Alfeche and Saunders entered into short-term loan agreements over the internet with defendant Cash America of Nevada. Mr. Alfeche obtained twenty-three loans from Cash America of Nevada between November 2006 and September 2007. Ms. Saunders obtained five[2] loans from Cash America of Nevada between July 2007 and January 2008. The amended complaint alleges that plaintiffs Alfeche and Saunders are typical of payday borrowers forced into a cycle of repetitive borrowing: borrowers requiring a loan between paychecks are often unable to repay the loan when it is due, so they may roll-over the loans to future payment periods and incur additional interest and finance charges, or seek additional loans to pay off an earlier loan. Compl. ¶¶ 18, 47, 60.

The loan agreements, signed by plaintiffs by clicking a link on defendants' website, each state: "This Customer Agreement will be governed by the laws of the State of Nevada, except

---

[2] Defendants state that Ms. Saunders obtained 15 payday loans, including extensions. Defs.' Mot. to Compel Arbitration & Stay at 1, 4. "A district court decides a motion to compel arbitration under the same standard it applies to a motion for summary judgment. The party opposing arbitration is given 'the benefit of all reasonable doubts and inferences that may arise.'" *Kaneff v. Del. Title Loans*, 587 F.3d 616, 620 (3d Cir. 2009) (citing *Par-Knit Mills, Inc. v. Stockbridge Fabrics Co., Ltd.*, 636 F.2d 51, 54 (3d Cir.1980)). We accept plaintiff's account of the facts.

that the arbitration provision is governed by the Federal Arbitration Act ("FAA")." Defs.' Mot. to Compel Arbitration & Stay, Exs. 1 & 2. Each loan agreement contains a "Waiver of Jury Trial and Arbitration Provision," stating that borrowers must raise all claims against lenders in arbitration proceedings on an individual basis.[3] *Id.* ¶¶ 1-3. Borrowers waive their right to file lawsuits in court, except in a small claims tribunal. *Id.* ¶ 2. Borrowers also waive their right to seek relief on a class or representative basis. *Id.* ¶ 3.

The arbitration provision permits borrowers to select either the American Arbitration Association or the National Arbitration Forum, or a local arbitrator who is an attorney, retired judge, or arbitrator registered and in good standing with an arbitration association. *Id.* ¶ 4. The

---

[3] The arbitration provision states, in pertinent part:
**WAIVER OF JURY TRIAL AND ARBITRATION PROVISION.** Arbitration is a process in which persons with a dispute: (a) waive their rights to file a lawsuit and proceed in court and to have a jury trial to resolve their disputes; and (b) agree, instead, to submit their disputes to a neutral third person (an "arbitrator") for a decision. Each party to the dispute has an opportunity to present some evidence to the arbitrator. Pre-arbitration discovery may be limited. Arbitration proceedings are private and less formal than court trials. The arbitrator will issue a final and binding decision resolving the dispute, which may be enforced as a court judgment. A court rarely overturns an arbitrator's decision. **THEREFORE, YOU ACKNOWLEDGE AND AGREE AS FOLLOWS:**
1.      For purposes of this Waiver of Jury Trial and Arbitration Provision (hereinafter the "Arbitration Provision"), the words "dispute" and "disputes" are given the broadest possible meaning. . . .
2.   You acknowledge and agree that by entering into this Arbitration Provision:
**(a) YOU ARE GIVING UP YOUR RIGHT TO HAVE A TRIAL BY JURY TO RESOLVE ANY DISPUTE ALLEGED AGAINST US OR RELATED THIRD PARTIES;**
**(b) YOU ARE GIVING UP YOUR RIGHT TO HAVE A COURT, OTHER THAN A SMALL CLAIMS TRIBUNAL, RESOLVE ANY DISPUTE ALLEGED AGAINST US OR RELATED THIRD PARTIES; and**
**(c) YOU ARE GIVING UP YOUR RIGHT TO SERVE AS A REPRESENTATIVE, AS A PRIVATE ATTORNEY GENERAL, OR IN ANY OTHER REPRESENTATIVE CAPACITY, AND/OR TO PARTICIPATE AS A MEMBER OF A CLASS OF CLAIMANTS, IN ANY LAWSUIT FILED AGAINST US AND/OR RELATED THIRD PARTIES.**
3. Except as provided in Paragraph 6 below, all disputes including any Representative Claims against us and/or related third parties shall be resolved by binding arbitration only on an individual basis with you. **THEREFORE, THE ARBITRATOR SHALL NOT CONDUCT CLASS ARBITRATION** . . .
6.   All parties, including related third parties, shall retain the right to seek adjudication in a small claims tribunal for disputes within the scope of such tribunal's jurisdiction. Any dispute, which cannot be adjudicated within the jurisdiction of a small claims tribunal, shall be resolved by binding arbitration. Any appeal of a judgment from a small claims tribunal shall be resolved by binding arbitration. . . .
*Id.* ¶¶ 1-3, 6 (emphasis in original).

arbitrator is to apply applicable substantive law (consistent with the FAA), may award statutory damages and/or reasonable attorney's fees allowed by applicable law, and may decide any motion that is substantially similar to a motion to dismiss for failure to state a claim or a motion for summary judgment.  *Id.* ¶ 5.  However, the arbitrator may not apply federal or state rules of civil procedure or evidence.  *Id.*  Regardless of who demands arbitration, the lender advances the borrower's portion of arbitration expenses, but the parties bear their own attorney's fees and costs such as witness and expert fees.  *Id.*  If the arbitrator's award is in favor of the borrower, the borrower need not reimburse the lender for the expenses advanced, and the lender will reimburse the borrower for any arbitration expenses previously paid; if the award is in favor of the lender, the borrower is required to reimburse the expenses advanced, not to exceed the amount of court costs incurred for a small claims filing, less any arbitration expenses the borrower has already paid.  *Id.*

Plaintiffs allege that defendant Cash America has earned approximately $10 million per year from payday lending to Pennsylvania citizens.  Plaintiffs claim actual damages from alleged interest, finance charges, and bank fees of $1,959.07 for Mr. Alfeche and $571.25[4] for Ms. Saunders.  Plaintiffs also seek: damages in the amount of three times all illegal interest and finance charges; attorney's fees and costs under the LIPL and UTPCPL; and three times all bank fees incurred as a result of plaintiffs' transactions with defendants under the UTPCPL.  Finally, plaintiffs request a declaratory judgment holding the choice of law and class action waiver

---

[4] Defendants assert that Ms. Saunders' damages are $1,321.25.  Defs.' Mot. to Compel Arbitration & Stay at 2, 5.  "A district court decides a motion to compel arbitration under the same standard it applies to a motion for summary judgment.  The party opposing arbitration is given 'the benefit of all reasonable doubts and inferences that may arise.'"  *Kaneff*, 587 F.3d at 620 (citing *Par-Knit Mills, Inc.*, 636 F.2d at 54).  We accept plaintiff's account of the facts.

provisions, contained in the loan agreement's arbitration provision, unconscionable and unenforceable under Pennsylvania law.

We have subject matter jurisdiction under the Class Action Fairness Act because there is diversity of citizenship between the parties and the aggregate amount in controversy from all putative class members exceeds $5 million.  *See* 28 U.S.C. § 1332(d)(2).

## II.     Defendants' Motion to Compel Individual Arbitration

Defendants move, based on the plain language of the arbitration provision contained in each loan agreement, to compel individual arbitration and stay litigation pending completion of arbitration.  Plaintiffs respond that the arbitration provision, in particular its class action waiver, is procedurally and substantively unconscionable and therefore unenforceable under Pennsylvania law.

### A.     Legal Standard

A court, not an arbitrator, decides issues of arbitrability, *i.e.*, whether the parties have submitted a particular dispute to arbitration in a valid arbitration clause.  *Green Tree Fin. Corp. v. Bazzle*, 539 U.S. 444, 452 (2003); *Harris v. Green Tree Fin. Corp.*, 183 F.3d 173, 179 (3d Cir. 1999).  A motion to compel arbitration is granted if there are no genuine disputes of material fact that: (1) a valid agreement to arbitrate was entered by the parties; and (2) the parties' particular claims are within the scope of the arbitration agreement.  *Kaneff v. Del. Title Loans*, 587 F.3d 616, 620 (3d Cir. 2009); *Trippe Mfg. Co. v. Niles Audio Corp.*, 401 F.3d 529, 532 (3d Cir. 2005).

There are no disputes of material fact.  It is clear there were agreements to arbitrate, evidenced by signed loan agreements, each containing an arbitration provision.  *See* Defs.' Mot.

to Compel Arbitration & Stay, Exs. 1 and 2.  It is also clear that plaintiffs' claims are within the scope of the arbitration provision; each loan agreement states that "all federal and state law claims, disputes or controversies, arising from or directly relating to this Agreement . . ." and "all claims based upon a violation of any state or federal constitution, statute or regulation" are subject to arbitration.  *Id.* ¶ 1.  The only issue is the validity of the arbitration provision.

The Federal Arbitration Act ("FAA"), 9 U.S.C. § 1 *et seq.*, "establishes a strong federal policy in favor of the resolution of disputes through arbitration."  *Alexander v. Anthony Int'l, L.P.*, 341 F.3d 256, 263 (3d Cir. 2003).  The FAA "creates a body of federal substantive law establishing and regulating the duty to honor an agreement to arbitrate."  *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 25 n.32 (1983).  The FAA provides that a "written provision in . . . a contract evidencing a transaction involving commerce[5] to settle by arbitration a controversy thereafter arising out of such contract or transaction . . . *shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract*."  9 U.S.C. § 2 (emphasis added).  "This saving clause permits agreements to arbitrate to be invalidated by generally applicable contract defenses, such as fraud, duress, or unconscionability, but not by defenses that apply only to arbitration or that derive their meaning from the fact that an agreement to arbitrate is at issue."  *AT&T Mobility, LLC v. Concepcion*, 131 S. Ct. 1740, 1746 (2011) (citations omitted).

**B.     Unconscionability**

Plaintiffs initially argued that the arbitration provision is unenforceable because it

---

[5] Whether the loan agreements evidence a transaction involving interstate commerce is not disputed.  The loans in this action were entered into over the internet by parties from different states; the loan agreements evidence transactions involving interstate commerce.

7

contains a class action waiver that is unconscionable under Pennsylvania law.  Plaintiffs now concede, in supplemental briefing, that their unconscionability challenge "has been effectively decided against them" as a result of the Supreme Court's decision in *Concepcion*.  Pl.'s Resp. to Defs.' Notice of Subsequent Authority at 2.

In *Concepcion*, the Supreme Court held that the FAA preempts California's unconscionability rule set forth in *Discover Bank v. Superior Court*, 113 P.3d 1100 (Cal. 2005)).  131 S. Ct. at 1753.  The plaintiffs in *Concepcion* entered into a cell phone agreement with defendant AT&T Mobility LLC ("AT&T").  *Id.* at 1744.  AT&T advertised that purchase of its cell phone service entitled plaintiffs to a free phone.  *Id.*  Plaintiffs received a free phone but were charged $30.22 in sales tax based on the phone's retail value.  *Id.*  Plaintiffs filed a complaint against AT&T in federal court; their complaint was later consolidated with a putative class action alleging, among other things, that charging sales tax on phones advertised as free constituted false advertising and fraud.  *Id.*

AT&T moved to compel individual arbitration under the terms of its cell phone agreement containing an arbitration clause with a class action waiver.  *Id.* at 1745.  Plaintiffs argued that the motion to compel individual arbitration should be denied because the class action waiver in the arbitration clause was unconscionable.  *Id.*  Relying on the California Supreme Court's decision in *Discover Bank*, the district court and court of appeals concluded that the class action waiver in the arbitration clause was procedurally and substantively unconscionable, and therefore unenforceable.  *Id.*; *see also Discover Bank*, 113 P.3d at 1110 (class action waivers in arbitration agreements are unconscionable "when the waiver is found in a contract of adhesion in a setting in which disputes between the contracting parties predictably involve small amounts of

damages . . .").

The Supreme Court reversed. The Court held that the FAA preempted California's unconscionability doctrine, and under the FAA, the arbitration clause and its class action waiver were valid and enforceable. *Concepcion*, 131 S. Ct. at 1746-53. FAA § 2 contains a savings clause permitting "generally applicable contract defenses, such as fraud, duress, or unconscionability," to invalidate an arbitration agreement, but even generally applicable defenses may be preempted by the FAA if they are "applied in a fashion that disfavors arbitration," undermining the FAA's central purpose of promoting arbitration. *Id.* at 1746-49. The Court reasoned that California law disfavors arbitration because it renders unconscionable nearly every class action waiver in an arbitration clause; the effect is to require that classwide arbitration be available in nearly every case. *Id.* at 1750. The Court reasoned that classwide arbitration undermines the central purpose of the FAA by "sacrific[ing] the principal advantage of arbitration—its informality" for a procedure that is "slower, more costly, and more likely to generate procedural morass than final judgment." *Id.* at 1750-51. Because Calilornia's unconscionability law has the effect of requiring the availability of classwide arbitration, and classwide arbitration undermines the central purpose of the FAA, the Court concluded that the FAA preempts California law. *Id.* at 1753.

Even if plaintiffs are correct that Pennsylvania law applies, the Supreme Court's analysis of California's unconscionability law applies with equal force to Pennsylvania's unconscionability law. In *Thibodeau v. Comcast Corp.*, the Pennsylvania Superior Court held that an arbitration clause with a class action waiver, contained in a Comcast cable television agreement, was unconscionable under Pennsylvania law. 912 A.2d 874, 885-86 (Pa. Super. Ct.

2006). The court determined the class action waiver was procedurally unconscionable because plaintiff "was forced to accept every word of all 10 pages of the mass-delivered Comcast [C]ustomer [A]greement or have no cable television service whatsoever, since Comcast holds a government-authorized geographic monopoly." *Id.* at 885. The court determined the class action waiver was substantively unconscionable because plaintiff's damages, a $9.60 per month overcharge, were so small that individual arbitration was economically unfeasible, and without an available class action, defendants were effectively immunized from liability. *Id.* at 885-86.

Like the California Supreme Court's decision in *Discover Bank*, the Pennsylvania Superior Court's decision in *Thibodeau*, in its analysis of the circumstances under which class action waivers are procedurally and substantively unconscionable, has the effect of requiring the availability of classwide arbitration. *See id.* The Supreme Court has held that state law requiring the availability of classwide arbitration undermines the FAA's central purpose and is preempted by the FAA. *See Concepcion*, 131 S. Ct. at 1753. The FAA preempts Pennsylvania's unconscionability law with regard to class action waivers in arbitration agreements.[6] Under FAA § 2, the instant arbitration clause containing a class action waiver is valid and enforceable.

Plaintiffs argue that even under *Concepcion*, defendants' motion to compel arbitration should be denied because defendants' unlicensed lending practices have been declared illegal by the Pennsylvania Supreme Court. *See Cash Am. Net of Nev., LLC v. Commonwealth of Pa.*, 8 A.3d 282 (Pa. 2010). If defendants' lending practices are illegal, plaintiffs argue that each loan

---

[6] The case for FAA preemption may be even stronger with *Thibodeau* compared to *Discover Bank*. In addition to its unconscionability analysis, the Pennsylvania Superior Court notes in *Thibodeau* that a class action waiver in an arbitration clause is unenforceable as against Pennsylvania public policy because Pennsylvania "encourages class action arbitration" and has a "longstanding policy favoring classwide arbitration." *Thibodeau*, 912 A.2d at 881. A policy favoring classwide arbitration is the policy the Supreme Court identified as undermining FAA objectives. *See Concepcion*, 131 S. Ct. at 1748-53.

10

agreement is also illegal.  The illegality of the entire loan agreement is for the arbitrator, not the court, to decide.  *See Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 449 (2006).  If the court orders individual arbitration, plaintiffs argue the arbitrator will conclude, under the Pennsylvania Supreme Court's recent decision, that the entire loan agreement is illegal; this will render the arbitration clause and its class action waiver, contained within the loan agreement, illegal and unenforceable, and will permit plaintiffs to return to federal court in a class action.

Plaintiffs' argument is not compelling.  We have determined that the arbitration clause is valid, and that plaintiffs' claims are within the scope of the arbitration clause; therefore, we must grant the motion to compel arbitration.  *See Kaneff*, 587 F.3d at 620.  Speculation about how the arbitrator will construe the loan agreement, even if it is possible that the arbitrator will find the entire loan agreement illegal and void, has no bearing on whether to compel arbitration.  *See Pacific Health Care Sys. v. Book*, 538 U.S. 401, 406-07 (2003) ("[W]e should not, on the basis of 'mere speculation' that an arbitrator might interpret these ambiguous agreements in a manner that casts their enforceability into doubt, take upon ourselves the authority to decide the antecedent question of how the ambiguity is to be resolved.").  Arguments concerning the legality of the loan agreements may be presented to the arbitrator.

### III. Conclusion

The arbitration clause is valid and enforceable under the FAA.  The motion to compel arbitration and stay litigation will be granted.  An appropriate order follows.